IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

IN RE:                                                          BK 06-71703-CMS-13

THOMAS A. CLARDY, and
PATRICIA CLARDY,

     DEBTORS.

## MEMORANDUM OF DECISION

This matter is before the court on debtors Thomas and Patricia Clardy's (Clardy) motion to value their residence located at 4530 47th Court East, Tuscaloosa, Alabama. The legal description of this property is Lots 16 and 17 of the Forestasia Subdivision. This residence is subject to a first mortgage to Jerry and Sally Manning and a second mortgage to Household Finance Corporation of Alabama (HFC). Both mortgages include both lots 16 and 17. The court has reviewed the evidence, including testimony and written appraisal reports of two appraisers, and finds that the property has a value of **not less than $65,000.00**.

## FINDINGS OF FACT
## and CONCLUSIONS OF LAW

The Clardys filed their bankruptcy petition on November 16, 2006 and filed their motion to value (BK Doc. 26) on December 12, 2006. They alleged in their motion that the underlying property has a value of $60,000.00. HFC filed a response (BK Doc. 33) asserting that the property has a value of $100,000.00. Debtors' plan, which was filed with their petition, proposes to pay the arrearage on the Manning first mortgage and pay the regular monthly payments to the Mannings, but proposes no distribution to HFC.

This court has jurisdiction of the Clardys' Chapter 13 bankruptcy case pursuant to 28 U.S.C. Section 1334(a). The court has jurisdiction of this contested matter, a core proceeding under 28 U.S.C. Section 157(b)(2)(K), pursuant to 28 U.S.C. Section 1334(b). The jurisdiction is referred to this court, pursuant to 28 U.S.C. Section 157(a) by the General Order of Reference of the United States District Courts for the Northern District of Alabama, Signed July 16, 1984, As Amended July

1

17, 1984.

The trial was held May 1, 2007, on the debtors' motion to value and confirmation of their plan. Both Clardy and HFC had licensed appraisers inspect the property and prepare written appraisals, as well as appear and testify at the hearing. Mr. Clardy also testified. The parties stipulated that both appraisers were qualified as experts and their testimonies, as well as copies of their written appraisals, were admitted without objection (Debtors' Exhibit 1, appraisal by Anthony Allison; Creditor's Exhibit A, appraisal by Richard Bailey).

The testimony of both appraisers, the testimony of Mr. Clardy, and the photographs submitted by Mr. Clardy (Debtors' Exhibit 2), lead to the inescapable conclusion that this house can only be characterized as a real fixer-upper. This house was constructed in 1974 and has not been maintained. There is a problem with ground water getting up next to the house, which leaks through the walls and into the house during heavy rains, resulting in damage to the carpet and linoleum flooring inside the house. Both the heating and air conditioning systems no longer work. The carpet in the house is worn out and needs replacing; shingles on the roof are worn out and need replacing; the roof sags which may be the result of structural damage sustained during a tornado (the debtors accepted a $3,200.00 insurance settlement for the storm damage); and the exterior masonite siding, facia, soffitt, and door frames show extensive rotting.

The house at issue is a modest house. It is three bedrooms and one bath and contains approximately 1,100 square feet. The house is approximately 33 years old. Both appraisers obtained actual sales prices for what they considered to be comparable houses. Mr. Bailey's comparables ranged in price from $95,000.00 to $109,900.00. Mr. Allison's comparables ranged in price from $60,000.00 to $72,000.00. They each then used standard appraising methods to adjust these prices to arrive at a value for the subject property. A review of the two appraisal reports indicates that the difference of opinions relate to the degree to which each appraiser feels this property has deteriorated. Mr. Allison estimated $18,500.00 for physical repairs. Mr. Bailey estimated $11,187.00. Mr. Allison attributed a remaining economic life of 30 years for the house, while Mr. Bailey gave it a 40 year remaining economic life.

2

Both appraisers agree that the value should be based upon comparable sales rather than the cost approach, but a review of their cost approach is informative. Mr. Allison's report indicates that a cost approach, including land, would give a new cost of $88,195.00. Mr. Bailey estimated new costs for land and house to be $83,240.00. Mr. Allison felt that a $46,751.00 adjustment should be made to the value based upon depreciation resulting in a cost approach value of $63,944.00. Mr. Bailey felt that a depreciation adjustment of $27,744.00 should be made resulting in a cost approach value of $81,496.00.

Both appraisers inspected this property inside and out and reviewed other sales that they considered comparable to arrive at what, in their judgment, was an estimated value of the property. Mr. Allison, on behalf of the Clardys, determined the value to be $60,000.00. Mr. Bailey, on behalf of HFC, estimated the value to be $82,000.00. Both Mr. Allison and Mr. Bailey are well qualified and experienced appraisers and yet they have come to dramatically different conclusions as to the value of the same piece of property. The Tuscaloosa County Tax Assessor has a third appraised value of $70,400.00 (Creditor's Exhibit B). This value is for a 1999 assessment of the house and includes lot 16 only. Mr. Clardy testified that he paid $76,000.00 for the house when he purchased it in 1998 and that included $13,000.00 attributable to the adjoining lot 17, which is used as a leaching field for the residence. Lot 17 is still owned by the Clardys. This would give a total tax assessor value for the property of $83,400.00. Applying the highest estimate for the cost of repair would give a value of $64,900.00.

This case is evidence that valuation of property is not an exact science. The testimony involves the subjective opinions of two qualified and experienced professionals. The difference in values is critically important to HFC. The first mortgage on the property is $63,805.96 (See Claim #13). If the value of the real estate is anything less than this amount, then HFC's second mortgage would be unsecured and they would receive no distribution in the debtors' plan. If the value is $63,806.00, then HFC's $45,000.00 claim must be paid in full as a secured claim (See Claim #8). The Eleventh Circuit in the <u>Tanner</u> case dictates this result depending upon a finding of either no equity for the second mortgage to attach to, or any equity for the second mortgage to attach to. The

3

Case 06-71703-CMS7    Doc 51    Filed 06/12/07    Entered 06/12/07 13:38:57    Desc Main
Document      Page 3 of 4

court in <u>Tanner</u> held that "[a]ny claim that is wholly unsecured...would not be protected from modification under section 1322(b)(2)." <u>Tanner v. FirstPlus Financial, Inc. (In re Tanner)</u>, 217 F.3d 1357, 1360 (11th Cir. 2000). Therefore, the court concluded that "[t]he better reading of sections 506(a) and 1322(b)(2), therefore, protects only mortgages that are secured by some existing equity in the debtor's principal residence." <u>In re Tanner</u>, 217 F.3d at 1360. The Eleventh Circuit in a subsequent case, while noting that "[v]aluation outside the actual market place is inherently inexact," recognized the binding effect of the <u>Tanner</u> decision. <u>American General Finance, Inc. v. Dickerson (In re Dickerson)</u>, 222 F.3d 924, 926 (11th Cir. 2000).

## CONCLUSION

The court having reviewed the exhibits submitted by the parties and the testimony of all witnesses finds that the value of the debtors' property is not less than $65,000 for purposes of determining the secured state of claims against the house pursuant to 11 U.S.C. § 506(a). Therefore, because the first mortgage on the property is $63,805.96, HFC's mortgage is secured by *some* existing equity in the debtor's principal residence and therefore cannot be modified under 11 U.S.C. § 1322(b)(2).

An order, consistent with these findings pursuant to Fed. R. Bankr. P. 7052, will be entered separately.

**DONE and ORDERED** this June 12, 2007.

/s/ C. Michael Stilson
C. Michael Stilson
United States Bankruptcy Judge

4